DECISION AND JUDGMENT ENTRY
{¶ 1} Halona Clark, appeals the Athens County Court of Common Pleas, Juvenile Division, adjudication granting permanent custody of her daughter, Kimberly Marano, to Athens County Children Services ("ACCS"). Clark argues that the trial court's judgment is against the manifest weight of the evidence. Specifically, Clark contends that: (1) ACCS's grounded its motion for permanent custody upon allegations that a family friend sexually molested Kimberly, and that ACCS failed to produce any evidence of the sexual molestation at trial; and (2) the record does not contain clear and convincing evidence demonstrating that permanent custody was in Kimberly's best interest. Because we find that the record contains some competent, credible evidence supporting the trial court's findings that Kimberly could not be placed with her parents within a reasonable time, and that permanent custody was in Kimberly's best interest, we disagree. Accordingly, we overrule Clark's sole assignment of error and affirm the judgment of the trial court.
 I. {¶ 2} Clark is the biological mother of Kimberly Marano, born on March 27, 1995. Richard Marano is Kimberly's biological father. On April 21, 2003, Clark voluntarily placed Kimberly with ACCS when Clark was hospitalized after a drug overdose. At the request of the parties, the trial court twice extended the voluntary agreement for care. Then, ACCS filed a complaint alleging Kimberly is a dependent child, and seeking a protective supervision order.
 {¶ 3} On August 13, 2003, ACCS obtained an ex parte emergency custody order after finding Kimberly at home in the care of Clark's then boyfriend, Don Robberts and his father, Don Robberts Sr., in violation of the case plan. After conducting a hearing the next day, the trial court issued an entry continuing the ex parte emergency custody order, and ACCS amended its complaint to seek temporary custody of Kimberly. Thereafter, the trial court found that Kimberly is a dependent child and granted ACCS temporary custody of Kimberly until August 13, 2004.
 {¶ 4} On June 1, 2004, ACCS filed a motion to modify the disposition to permanent custody, alleging that Kimberly could not be placed with her natural parents within a reasonable period of time and should not be placed with either parent.
 {¶ 5} The trial court conducted the dispositional hearing on June 23 and 28, 2004. The court heard testimony from: Kimberly's counselor, CASA guardian ad litem and caseworker; the counselor who conducted Clark's parenting assessment; Clark's counselor; Clark's former boyfriend; Clark's former housemate; Clark's former landlord; Clark and her current live-in boyfriend.
 {¶ 6} On July 15, 2004, the trial court rendered a decision wherein it found that: (1) permanent custody was in Kimberly's best interest; (2) ACCS demonstrated by clear and convincing evidence that Kimberly could not be placed with either parent within a reasonable time and should not be placed with either parent; (3) Kimberly's father had abandoned her; and (4) ACCS made reasonable efforts to prevent Kimberly's removal from the home, to eliminate her continued removal from the home, and to make it possible for Kimberly to return safely to the home. Accordingly, the trial court granted ACCS's request for permanent custody.
 {¶ 7} On August 13, 2004, the trial court issued a nunc pro tunc decision and judgment entry identical in substance, but correcting a clerical error that caused the prior decision and judgment entry to be filed in only one of the two pending cases involving Kimberly's welfare.
 {¶ 8} Clark timely appeals, raising the following assignment of error: "The trial court erred by an award of permanent custody to Athens County Children Services because the evidence submitted at trial does not support such a finding."
 {¶ 9} On September 16, 2004, ACCS moved this court to dismiss this action for failure to prosecute, given that Clark failed to timely file her appellate brief. Clark filed her brief on September 15, 2004, eight days after the deadline. On October 4, 2002, we denied ACCS's motion noting that there had been no prejudice or undue delay, and this court's preference to decide cases on their merits. Accordingly, we shall now address Clark's assignment of error.
 II. {¶ 10} In her sole assignment of error, Clark contends that the trial court erred when it terminated her parental rights because the record does not clearly and convincingly establish that permanent custody is in Kimberly's best interest. Additionally, Clark contends that the basis of ACCS's motion for permanent custody was the allegation that Don Robberts, Sr. molested Kimberly. She argues that ACCS only focused upon her alcoholism and failure to obtain employment as grounds for terminating her parental rights when ACCS failed to produce any evidence of the alleged molestation.
 {¶ 11} An award of permanent custody must be supported by clear and convincing evidence. In re Hiatt (1993),86 Ohio App.3d 716, 725. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt in criminal cases. It does not mean clear and unequivocal."In re Estate of Haynes (1986), 25 Ohio St.3d 101, 103-04.
 {¶ 12} We will not reverse the judgment of the trial court if there is some competent, credible evidence going to all the essential elements of the case. State v. Schiebel (1990),55 Ohio St.3d 71, 74. We give the trial court's final determination "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In re Alfrey, Montogomery App. No. 01CA0083, 2003-Ohio-608, at 102, citing Miller v. Miller
(1988), 37 Ohio St.3d 71, 74.
 {¶ 13} R.C. 2151.414(B)(1)(d) provides in part that the court may grant permanent custody to an agency if it is in the child's best interest and "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." Clark does not dispute that Kimberly has been in ACCS's temporary custody for more than twelve months of the past twenty-two months.
 {¶ 14} To determine whether it is in a child's best interest to terminate parental rights, the court shall not consider the effect that granting permanent custody to the agency will have on the parent. R.C. 2151.414(C). Among the factors that the court must consider are: (1) the child's interaction and relationships with parents, siblings, and other care-givers; (2) the child's wishes, as expressed by the child or through the child's guardian ad litem; (3) the child's custodial history, including whether the child has been in custody for twelve of more of a twenty-two month period; (4) the child's need for, and the parent's ability to provide, a legally secure placement; and (5) whether parents have been convicted of certain crimes, have failed to provide food or medical attention to their children, or have abandoned their children. R.C. 2151.414(D). The court shall also consider any other relevant factors. Id.
 {¶ 15} Here, the trial court carefully enumerated each of the R.C. 2151.414(D) factors for determining Kimberly's best interests and made specific factual findings with regard to each. First, with regard to Kimberly's interaction and relationship with her parents and other caregivers, the court found that Kimberly had no relationship with her father and an inappropriate relationship with her mother. The trial court found, and the record reflects, that Kimberly had not seen her father in over two years, and that he only called her once during the entire time she had been in foster care. The record also reflects that Kimberly's father lives in Florida, is the subject of certain sexual abuse allegations involving Kimberly's half-sister, and chose not to participate in the custody proceedings. Clark does not dispute that Kimberly's father has abandoned her.
 {¶ 16} With regard to Clark, the trial court found that her personal problems and lifestyle choices resulted in her failure to properly parent and nurture Kimberly. Specifically, the trial court noted testimony regarding Clark's interaction with Kimberly during planned visits, where Clark demonstrated a lack of affection or concern about Kimberly's life and activities, and a preoccupation with getting Kimberly to notice her appearance and compliment her. The testimony of Susan Ballard, the ACCS caseworker assigned to this case, supports this finding. Ms. Ballard further testified that, rather than focusing upon Kimberly during her visits, Clark spent an inordinate amount of time discussing her own issues and future plans, and providing false hope for Kimberly. Ms. Ballard's testimony also reflects that Clark moved to Florida during the pendency of the case without any notice to ACCS; that Clark did not return Ohio for a period of approximately four months, during which time she could not visit with Kimberly; and that, even when she was in Ohio, Clark failed to attend most of her weekly visits with Kimberly.
 {¶ 17} Additionally, Ms. Ballard's testimony supports the trial court's conclusion that Kimberly had a good relationship with her foster parents. Specifically, Ms. Ballard testified that Kimberly had a healthy relationship with her foster parents, and that she was able to quickly adapt when her original foster parents retired and ACCS placed her with another family.
 {¶ 18} Second, with regard to the child's wishes as expressed by the child or through the child's guardian ad litem, the trial court found that Kimberly would like for everything to go well enough to reunite with her mother. Ms. Ballard testified that Kimberly expressed that she wants her mother and Mr. Robberts to reunite so that her mother will be happy. In her June 8, 2004 report, Jennifer Sprague, Kimberly's GAL, states that Kimberly misses her mom, but that she "knows now what a normal life can be like and seems to really enjoy it." Additionally, the GAL stated that Kimberly believes that she will be returning home because of the comments her mother has made to her, but that she understands that her mom has a lot to do before that is possible. The GAL also expressed her opinion that Kimberly is beginning to realize that her mother may not be returning to her life.
 {¶ 19} The third best interest factor is the custodial history of the child. The parties do not dispute that Kimberly has been in the custody of ACCS for more than twelve of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 20} The fourth best interest factor is the child's need for, and the parent's ability to provide, a legally secure placement. Here, Kate Jiggins, Kimberly's counselor, testified that Kimberly has symptoms of flat affect, difficulty with expressing emotion, and some withdrawal from people, resulting in the diagnosis of a mood disorder. Ms. Jiggins also testified that Kimberly exhibits most of the symptoms of post-traumatic stress disorder, including witnessing events where someone important in her life was threatened with harm, depression, fear, and psychological distress as evidenced by Kimberly's urinating in her clothing in December 2003. Ms. Jiggins testified that Kimberly needs a nurturing, stable, supportive, structured environment to help heal her mental health disorders, and that Kimberly did not have that type of environment when she was with Clark.
 {¶ 21} Furthermore, the record reflects that, when Kimberly first entered the foster care system, she struggled with her school work, was behind grade level, and operating under an individualized educational plan ("IEP"). However, with the stability of a normal family life, she has caught up to the appropriate grade level, and probably will not need an IEP in the future.
 {¶ 22} Finally, the trial court noted that none of the remaining factors listed in R.C. 2151.414(E)(7) through (11) applied, except that Kimberly's father abandoned her.
 {¶ 23} We find that these factors, taken together, constitute some competent, credible evidence that granting permanent custody to ACCS is in Kimberly's best interest.
 {¶ 24} Contrary to Clark's arguments, ACCS did not base its motion for permanent custody solely upon allegations that Don Robberts, Sr. molested Kimberly. Specifically, we find ACCS alleged that Kimberly could not and should not be placed with Clark due to Clark's: (1) mental health issues; (2) chronic alcohol dependency; (3) failure to abide by the safety plan which prohibited alcohol and drugs, and persons using or under the influence of alcohol and drugs in the home; (4) failure to establish appropriate child care for Kimberly as required by the case plan; (5) allowing a convicted sex offender to reside in the home and provide child care for Kimberly; (6) moving to Florida in December 2003 without notifying ACCS; and (7) failure to comply with the terms of the case plan requiring her to obtain a drug/alcohol assessment and counseling. The trial court, therefore, considered these allegations in connection with its examination of the factors enumerated in R.C. 2151.414(E)(1), (2), (4), and (10), in determining whether Kimberly could not or should not be placed with either parent within a reasonable time.
 {¶ 25} R.C. 2151.414(E)(1) deals with the parent's continuous and repeated failure to substantially remedy the problems that initially caused the child to be placed outside the home despite reasonable case planning and diligent efforts of children services to assist the parents. Here, ACCS removed Kimberly from the home due to the inappropriate home environment, including the alcohol use and abuse of Clark and her live-in boyfriend, Don Robberts. The trial court found that Clark failed continuously and repeatedly to substantially remedy the conditions causing the continued removal of Kimberly based upon her failure to obtain suitable stable housing for Kimberly.
 {¶ 26} The record clearly reflects that Clark repeatedly failed to obtain suitable and stable housing appropriate for Kimberly. Testimony revealed that she moved in with a series of men, essentially becoming their dependent due to her lack of consistent, stable employment. During the majority of ACCS's involvement, Clark resided with Mr. Robberts, who, by all reports, drank constantly. By Clark's own admission, Mr. Robberts was a very violent, controlling man who beat her up a number of times.
 {¶ 27} In December 2003, without any notice to ACCS, Clark moved to Florida. There, over a period of approximately six months, she resided with two different men, in two different trailers, and two motel rooms. In March and June of 2004, Clark returned to Ohio and attempted to reunify with Mr. Robberts who, by Clark's own admission, beat her up "a number of times" since she moved to Florida.
 {¶ 28} In her testimony, Clark agreed that all of her moves and her attempts to reunify with her abusive, alcoholic boyfriend did not provide a safe, stable environment or household for Kimberly. Thus, the record contains some evidence tending to demonstrate that, despite receiving assistance from ACCS in the form of counseling referrals, financial assistance, transportation vouchers, and offers to get Clark away from Robberts and into a shelter, Clark repeatedly failed to provide a stable home environment for Kimberly.
 {¶ 29} R.C. 2151.414(E)(2) directs the court to consider the "[c]hronic mental illness, emotional illness, * * * or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *." Here, the trial court found that Clark has a substantial history of drug and alcohol abuse that she failed to address through the counseling services ACCS made available to her.
 {¶ 30} The court heard testimony that Clark has a substantial history of drug and alcohol abuse, and that Clark and Robberts would "wake up in the morning drinking and go to bed drinking . . . [i]f there was beer available, she was drinking." In fact, Clark's overdose on prescription medication and alcohol required a three day hospitalization and necessitated the original voluntary agreement for Kimberly's care in this case. Don Robberts, Clark's former boyfriend, testified that Clark was a sloppy, violent drunk, who could not even find her mouth to eat when she was drunk. Clark admitted that she used pills and was a "very bad alcoholic[,]" but claimed that, as of the June 2004 hearing, she had not had a drop of alcohol since December 2003. However, George Etie, the former housemate of Clark and Don Robberts, testified that he witnessed Clark and Robberts drinking as recently as June 2004.
 {¶ 31} As part of her case plan, ACCS required Clark to participate in a drug and alcohol assessment and follow any treatment recommendations. The assessment took place on May 21, 2003. As a result of the assessment, the counselor recommended that Clark participate in the weekly woman's recovery group and have monthly individual counseling sessions. Testimony revealed that Clark complied with this recommendation for the month of June 2003, but stopped attending the group meetings in July 2003, and was removed from the group's roster in September 2003. Testimony also revealed that Clark failed to attend any of her individual counseling sessions, and the counseling agency discharged her against staff advice.
 {¶ 32} While Clark testified that she enrolled in counseling while she resided in Florida, she admitted that she only attended three sessions beginning in May 2004. However, ACCS introduced a "Closing Summary" prepared by Clark's Florida counselor noting that she discharged Clark from treatment for non-compliance after Clark missed her June 7, 2004 counseling session.
 {¶ 33} Based upon the foregoing, we find that the record contains some competent, credible evidence to support the trial court's finding that Clark's alcohol dependency is so severe that it makes her unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the custody hearing.
 {¶ 34} R.C. 2151.414(E)(4) directs the court to consider whether "the parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]"
 {¶ 35} Here, the trial court found that Clark has been unwilling to put her daughter high enough in her priorities to accomplish a demonstrated commitment toward her. Mary Ann Linscott, a parent instructor educator for ACCS, testified that the assessment she performed on Clark demonstrated that Clark's attitude about rearing and parenting children is safe. Ms. Linscott further explained that this means Clark has a core belief or understanding of what is age appropriate for children, appropriate discipline, appropriate parent and child roles. However, Ms. Linscott indicated that factors such as substance abuse, domestic violence and mental health stressors can cause individuals to act in a manner that is inconsistent with their core beliefs.
 {¶ 36} The trial court noted that while Clark knows what to do to provide a safe, secure setting for Kimberly, she is either unwilling or unable to do so. The trial court cites Clark's decision to leave the state and forego visitation with Kimberly for four months during the pendency of the permanent custody action as evidence of her lack of commitment to Kimberly. Additionally, we note that Ms. Ballard's testimony revealed that, even before she moved to Florida, Clark did not attend most of her scheduled, weekly visitation sessions with Kimberly, often calling to report that she was sick and unable to attend. These failures, combined with Clark's demonstrated failure to establish a stable, permanent home for Kimberly constitute some competent, credible evidence of Clarks lack of commitment to Kimberly.
 {¶ 37} R.C. 2151.414(E)(10) requires the court to consider whether a parent has abandoned the child. Here, the trial court determined that Kimberly's father abandoned her. Witnesses testified that Kimberly has not seen her father, Richard Marano, in two years, and that he has only called her once while she was in foster care. Additionally, the court heard testimony that her father sexually abused Kimberly's half-sister. Clark does not dispute that Richard Marano has abandoned Kimberly.
 III. {¶ 38} Based upon the forgoing, we find that the record contains some competent, credible evidence to support the trial court's conclusion that: (1) it is in Kimberly's best interest for the court to grant permanent custody to ACCS; (2) Kimberly cannot be placed with either parent within a reasonable time, or should not be placed with either parent; and (3) Kimberly's father has abandoned her. Clark does not dispute that ACCS has made reasonable efforts to prevent Kimberly's removal from the home, to eliminate the continued need for Kimberly's removal from the home, and to make it possible for Kimberly to return safely to the home. Accordingly, we overrule Clark's sole assignment of error and affirm the judgment of the trial court.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, J. and Abele, J.: Concur in Judgment and Opinion.