[Cite as *In re Z.S.*, 2010-Ohio-5038.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

IN THE MATTER OF: Z.S.,     :
A Minor Child     :

    :    Case No: 10CA16
    :
    :    **DECISION AND**
    :    **JUDGMENT ENTRY**
    :
    :    File-stamped date:  10-4-10

---

## APPEARANCES:

C. Michael Gleichauf, Ironton, Ohio, for Appellant.

J.B. Collier, Jr., Lawrence County Prosecutor, and Kevin Waldo, Lawrence County Assistant Prosecutor, Ironton, Ohio, for Appellant.

---

Kline, J.:

**{¶1}** Vivian Gamble, mother of Z.S., appeals the judgment of the juvenile court awarding permanent custody of Z.S. to the Lawrence County Department of Job and Family Services, Children Services Division ("Children Services").  Grady Smith, Z.S.'s father, did not take part in this appeal and is presently incarcerated.  On appeal, Gamble contends that the trial court's determination that the child be placed in the permanent custody of Children Services was against the manifest weight of the evidence.  Because we find that the record contains competent, credible evidence supporting the decision of the trial court, we disagree.  Gamble also contends that her attorney below provided ineffective assistance.  Because Gamble failed to show that her

trial counsel's performance was deficient and that the deficient performance prejudiced her, we disagree.  Accordingly, we affirm the judgment of the juvenile court.

I.

**{¶2}**     On June 26, 2008, Children Services requested an ex parte order of custody of Z.S. to remove him from his home because the child was alleged to be abused, dependent, or neglected.  The next day, the juvenile court granted Children Services temporary custody of Z.S.

**{¶3}**     Children Services filed a complaint in juvenile court that alleged Z.S. was an abused, dependent, or neglected child.  The complaint alleged that the "child's mother admits the use of non-prescribed pain pills, marijuana and use of crack cocaine and ingesting several morphine pills during pregnancy.  Said mother's continued drug use contributed to the premature birth of this child and medical records reveal that the mother has serious drug issues.  The father of the child has apparently done nothing to protect the unborn child from the mother's drug usage."

**{¶4}**     The case came to court for an adjudicatory hearing on July 3, 2008, and both parents admitted to the charges.  The trial court found that Z.S. was an abused, neglected, and dependent child and  entered an order in its journal instructing Children Services to prepare a case plan for reunification.

**{¶5}**     Children Services proposed a plan requiring Gamble to complete the following objectives for potential reunification: 1) submit to a psychological examination; 2) attend and complete a drug or alcohol assessment by an approved service provider and all recommended counseling treatments; 3) seek a domestic violence group to work through domestic violence issues; 4) attend a parenting class in order to obtain the skills

needed to cope with a special needs child[1]; 5) sign the necessary releases so that Children Services can obtain any necessary information from mental health agencies; and 6) obtain appropriate housing and be able to provide items necessary for Z.S.'s welfare (e.g., bedding, clothing, baby care supplies).

{¶6}    On August 25, 2008, the court accepted the case plan and incorporated it into the court's dispositional order.  It is uncontested that Gamble did not make progress on any of these objectives during the pendency of the case below.  At least in part, this is due to Gamble's incarceration in Kentucky on drug charges.  Gamble was incarcerated on August 21, 2008, about two months after the filing of the complaint.  Initially, Gamble was eligible for parole in September of 2009, but she was not released until January 11, 2010, about two weeks prior to the permanency hearing.

{¶7}    Children Services had filed a motion for permanent custody on August 18, 2009, during Gamble's incarceration.  The matter came to a hearing before the trial court on January 26, 2010.  The State presented two witnesses.  First, Alyssa Anaya testified that she was the case worker responsible for Z.S. for the first two months of the present case.  She also testified that the child's father had an extensive criminal history and that Z.S. had been placed in foster care because there was no relative available for placement.  Second, Ginger Baker testified that she was the case worker for the remainder of the case.  She testified that she received only three letters and a phone call from Gamble over a period of a year and a half.  Baker also testified that other incarcerated individuals had successfully worked on their case plans in the past.  And

---

[1] The record reflects that Z.S. suffers from a medical condition known as Capillary Venous Lymphatic Malformation with Overgrowth, more commonly known as a "port wine stain."  This particular condition requires frequent medical examinations for potential tumors, has caused the entire left side of Z.S.'s body to be larger than his right side, and presents additional risks of internal bleeding as well as infection.

she concluded that, notwithstanding a previously granted continuance of the sunset date of the plan, Gamble had failed to take any action on the plan objectives.

{¶8}     In response, Gamble testified that while she was incarcerated in Kentucky, she did not have any access to resources necessary to complete any plan objectives. She also testified that she had attempted to call Children Services numerous times, but that she had to call collect and Children Services did not accept the charges.  And, finally, that she hoped to shortly move out of the halfway house where she presently lived and move in with a friend she had met in prison.

{¶9}     Subsequent to the hearing, the guardian ad litem for Z.S. filed a report that concluded "it is in Z.S.'s best interest that some permanency be achieved.  The mother's plans for parole and case plan completion include too many unknown factors. It is unknown whether her home placement with a fellow inmate will or even should be approved.  It is unknown how long it will take her to transfer her probation to Lawrence County, Ohio.  She is not financially independent, has made no educational or vocational progress while incarcerated and has not begun counseling.  It is unknown whether she could successfully complete the case plan objectives even if given additional time.  Further, her plans are completely dependent on receiving help from other people.  Regardless of how well-intentioned [Gamble] may be, it is unknown whether these people will come through for her."  Guardian ad Litem's Report at 4-5. Neither party objected to the report of the guardian ad litem.

{¶10}    The trial court issued an order on February 24, 2010 that granted Children Services' motion for permanent custody.  Gamble appeals and assigns the following errors for our review: I. "THE TRIAL COURT ERRED IN ORDERING PERMANENT

CUSTODY TO THE LAWRENCE COUNTY DEPARTMENT OF JOB AND FAMILY

SERVICES, CHILDREN SERVICES DIVISION, AS SUCH WAS AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE." And, II "APPELLANT WAS DENIED HER

RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT THE PERMANENT

CUSTODY HEARING."

II.

**{¶11}**    Gamble first contends that the decision of the trial court was against the

manifest weight of the evidence.

**{¶12}**    We note that a parent's "interest in the care, custody, and control of [his or

her] children 'is perhaps the oldest of the fundamental liberty interests[.]'" *In re D.A.*,

113 Ohio St.3d 88, 2007-Ohio-1105, at ¶8, citing *Troxel v. Granville* (2000), 530 U.S.

57, 65. Further, "[p]ermanent termination of parental rights has been described as 'the

family law equivalent of the death penalty in a criminal case.'" *In re D.A.* at ¶10, quoting

*In re Smith (1991)*, 77 Ohio App.3d 1, 16. As such, "parents 'must be afforded every

procedural and substantive protection the law allows.'" *In re D.A.* at ¶10, quoting *In re

Hayes* (1997), 79 Ohio St.3d 46, 48. "'[I]t is plain that the natural rights of a parent are

not absolute, but are always subject to the ultimate welfare of the child, which is the

polestar or controlling principle to be observed.'" *In re Cunningham* (1979), 59 Ohio

St.2d 100, 106, quoting *In re R.J.C.* (Fla.App. 1974), 300 So.2d 54, 58.

**{¶13}**    "A public or private child-placement agency may file a motion under R.C.

2151.413(A) to request permanent custody of a child after a court has committed the

child to the temporary custody of the agency pursuant to R.C. 2151.353(A)(2)." *In re

C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶22. Once an R.C. 2151.413(A) motion is

filed, the court must follow R.C. 2151.414.  Id.  "[T]he court shall schedule a hearing and give notice of the filing of the motion and of the hearing[.]"  R.C. 2151.414(A)(1).

{¶14}    A trial court may grant the agency's motion for permanent custody if it determines by clear and convincing evidence that: (1) one of the four conditions outlined in R.C. 2151.414(B)(1)(a)-(d) applies; and (2) it is in the child's best interest.  R.C. 2151.414(B)(1); *In re McCain*, Vinton App. No. 06CA654, 2007-Ohio-1429, at ¶13.

{¶15}    Gamble contends that the trial court erred in making the required findings because they are against the manifest weight of the evidence.  An award of permanent custody must be supported by clear and convincing evidence.  *In re Hiatt* (1993), 86 Ohio App.3d 716, 725.  The Supreme Court of Ohio has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal."  *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 104.

{¶16}    We will not reverse the judgment of the trial court when some competent, credible evidence supports the trial court's findings.  *In re Marano*, Athens App. No. 04CA30, 2004-Ohio-6826, at ¶12.  As such, we must determine if competent, credible evidence supports the trial court's findings concerning R.C. 2151.414(B)(1) and the best interest of the child.

{¶17}    First we consider the required finding under R.C. 2151.414(B)(1).  The record demonstrates that Z.S. has been in the temporary custody of Children Services since June 27, 2008.  R.C. 2151.414(B)(1)(d) provides that the trial court may grant

permanent custody to a movant if "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period[.]"  See, also, *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, syllabus.  Here, Gamble admitted on the stand she spent sixteen and one half months in prison during the pendency of these proceedings.  Transcript at 95.  During the entirety of this time, Z.S. was in the temporary custody of Children Services.  We find competent, credible evidence in the record to support the trial court's finding under R.C. 2151.414(B)(1)(d).

**{¶18}**      Second, the trial court concluded that the best interest of the child supported granting the motion for permanent custody.  R.C. 2151.414(D) provides, in part, that the trial court in determining the best interest of a child "shall consider all relevant factors, including, but not limited to, the following: (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period[;] * * * (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]."

**{¶19}**      The first statutory best interest factor is the child's relationship with his foster caregivers and with his parents.  Baker testified that Z.S. was doing well in his current

placement.  Transcript at 82.  The report of the guardian ad litem indicated that Z.S. had "bonded" with his foster mother.  Guardian ad Litem's Report at 2.  Due to Gamble's incarceration, she has spent very little time with Z.S.  She has also had little or no communication with him.  As such, there was competent, credible evidence in the record that this factor supported granting Children Services permanent custody.

**{¶20}**     The second statutory best interest factor is the child's wishes.  The trial court's order did not consider this factor.  Apparently, the trial court agreed with the guardian ad litem that the child was too young to express a meaningful preference.  See Guardian ad Litem's Report at 2.  Gamble does not contest this finding and entered no objection to the report of the guardian ad litem before the trial court.  There was competent, credible evidence in the record supporting the trial court's decision to disregard this factor.

**{¶21}**     The third statutory best interest factor is the custodial history of the child.  The trial court expressly found that the child had spent at least twelve or more months of a consecutive twenty two month period in the custody of Children Services.  The docket of the case supports this finding.  There was competent, credible evidence in the record to support the trial court's finding that this factor supported granting permanent custody to Children Services.

**{¶22}**     The fourth statutory best interest factor is the child's need for a permanent placement.  The guardian ad litem concluded that the child was in need of a permanent placement.  Guardian ad Litem's Report at 4.  Again, Gamble raised no objection to this report.  There was competent, credible evidence in the record to support the trial court's finding on this factor.

**{¶23}** Gamble does not really argue in her brief that the trial court could not have found any of these statutory best interest factors. That is, she appears to accept that the foster parents have a closer relationship with Z.S. than she does. She certainly accepts that Z.S. has spent twelve or more months in the custody of Children Services. And she also accepts that she has made no progress in compliance with the reunification plan.

**{¶24}** Gamble does argue that she is not to blame for any of these issues. She testified that it was impossible, or at least extremely difficult, for her to communicate while she was imprisoned in Kentucky. She also noted that the Kentucky prison did not offer any kind of substance abuse programs for her to enroll in. Finally, she notes that Children Services knew that she would be incarcerated before they wrote the reunification plan. Therefore, she argues that the fact she did not complete the reunification plan should not be held against her.

**{¶25}** We note that Gamble's argument misunderstands the nature of a trial court's decision in a permanency hearing. In this context, a trial court does not primarily apportion guilt or find fault. Instead, the trial court focuses on the best interest of the child. *In Matter of Clark* (Apr. 4, 1995), Harrison App. No. 461. Even should we agree that Gamble is not at fault for failing to satisfy any of the conditions of the reunification plan, nonetheless, the trial court may have held that the best interests of the child required that the court grant Children Services' motion for permanent custody.

**{¶26}** Significantly, the trial court concluded that Z.S. was in need of a secure permanent placement. At the time of the permanency hearing, there is no question but that Gamble was not capable of taking care of Z.S. She had no independent housing,

no job, and was on parole in a different state. As the guardian ad litem concluded, "[f]urther, according to [Gamble's] testimony, the earliest she can hope to be a free person in Ohio is mid to late March, 2010, providing that everything goes as planned, and then she would still have to complete all of the case plan requirements." Guardian ad Litem's Report at 4. The trial court reasonably concluded that Z.S. needed some permanent placement, and, as the trial court noted, the only possible placement at the time of the hearing was with Children Services. And based on the foregoing, we find that there was competent, credible evidence in the record to support the trial court's finding that the best interest of the child supported granting the motion for permanent custody.

{¶27}     Finally, there is competent, credible evidence in the record that supports the trial court's finding that the child could not be placed with either parent within a reasonable period of time. We note that this finding was unnecessary. R.C. 2151.414(B)(1)(d), unlike R.C. 2151.414(B)(1)(a), does not require the court to make a finding of whether the child can be placed with the child's parents within a reasonable period of time. Nonetheless, the trial court's finding, while statutorily unnecessary, influenced the court's decision to grant Children Services' motion. In the trial court's opinion, this finding goes hand in glove with the court's conclusions regarding the child's need for permanent placement and the best interests of the child. In a sense, the trial court concluded that the child was in need of a permanent placement, and the court concluded that the only possible placement within the near future was with Children Services. In context, the trial court's finding that the child could not be placed with either parent within a reasonable period of time is intertwined with its conclusion

regarding the child's best interest. The gist being that the child was in need of a permanent placement and the only available placement within a reasonable period of time was with Children Services. This factor constitutes a permissible factor under R.C. 2151.414(D), which empowers a court to consider "all relevant factors" in determining a child's best interest.

{¶28} Under R.C. 2151.414(E)(1), a trial court may find that a child cannot be placed with a parent within a reasonable time where "[f]ollowing the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."

{¶29} Again, Gamble largely agrees with the trial court's facts but argues that her failure to complete any stated objectives in the reunification plan is not her fault. Again, even if we credit this argument, this misunderstands the nature of the proceeding. The focus here is not on any fault or lack thereof of the parent. The question is whether the child can be placed with either parent within a reasonable period of time. Here based on Gamble's testimony and the report of the guardian ad litem, we find that there was

some competent, credible evidence in the record to support the trial court's conclusion that the child could not be placed with either parent within a reasonable period of time.

**{¶30}** We have found competent, credible evidence in the record supporting the trial court's conclusions, and we therefore overrule Gamble's first assignment of error.

III.

**{¶31}** In her second assignment of error, Gamble contends that she was denied the effective assistance of counsel.

**{¶32}** The two part test for ineffective assistance of counsel in criminal cases, as announced in *Strickland v. Washington* (1984), 466 U.S. 668, is equally applicable to state actions for permanent custody. *In re A.M.*, Adams App. No. 08CA862, 2008-Ohio-4835, at ¶33 (internal citations omitted); *In re King* (Aug. 11, 1999), Adams App. No. 99CA671, citing *Jones v. Lucas Cty. Children Services Bd.* (1984), 46 Ohio App.3d 85, 86. "In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness." *State v. Wright*, Washington App. No. 00CA39, 2001-Ohio-2473, citing *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155-56, cert. den. *Hamblin v. Ohio* (1988), 488 U.S. 975; *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 301. As this court has noted, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Wright*, citing *Strickland* at 685-86.

**{¶33}** The party alleging ineffective assistance of counsel must show two things: (1) "that counsel's performance was deficient[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland* at 687. Unless both prongs are shown, it cannot be said that there was a "breakdown in the adversary process that renders the result unreliable."  Id.

**{¶34}** Specifically, Gamble claims the following: "In the case at hand the attorney for the Appellant presented the court with little evidence to counter the State's contentions for permanent custody.  The only witness the attorney for the Appellant called was the [A]ppellant.  The attorney for the [A]ppellant introduce[d] two letters into evidence that the [A]ppellant had written, but failed to introduce any additional evidence.  Additionally the Appellant's trial counsel failed to challenge the [report of the guardian ad litem], or to cross examine the [guardian ad litem] as to her findings."

**{¶35}** However, when considering an appeal based on the ineffective assistance of counsel, we "will not presume prejudice but will require an affirmative showing thereof." *Matter of Shelton* (Mar. 16, 1993), Highland App. No. 818.  See, also, *State v. Sanders*, 92 Ohio St.3d 245, 273, 2001-Ohio-189 ("A reviewing court must strongly presume that 'counsel's conduct falls within the wide range of reasonable professional assistance[.]'"), quoting *Strickland* at 689.  In the present case, Gamble provides absolutely nothing other than the bare speculation that her attorney could have, and should have, called more witnesses and cross-examined the guardian ad litem.  Gamble provides no evidence that the outcome of the proceedings would have been different had Gamble's trial counsel called these unnamed witnesses or asked these unstated questions.  As

such, she fails to carry her burden to demonstrate the prejudice prong of the *Strickland* test.

**{¶36}**     We therefore overrule Gamble's second assignment of error.

IV.

**{¶37}**     Having overruled both of Gamble's assignments of error, we affirm the judgment of the Lawrence County Common Pleas Court, Juvenile Division.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and appellant pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J. and Harsha, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
      Roger L.  Kline, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No.  14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**