[Cite as *In re M.M.*, 2019-Ohio-5246.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE M.M.

A Minor Child

[Appeal by S.M., Mother]

:
:
:
:
:
:

No. 108710

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 19, 2019

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-16915042

***Appearances:***

Rick L. Ferrara, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Willie Mitchell, Assistant Prosecuting
Attorney, *for appellee.*

LARRY A. JONES, SR., J.:

{¶ 1}  Mother, S.M., appeals the trial court's award of permanent custody of M.M. to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "Agency").  For the reasons that follow, we affirm.

**Procedural History and Facts**

{¶ 2} In 2016, CCDCFS filed a complaint for neglect and requested temporary custody of M.M. M.M. was adjudicated dependent and committed into the Agency's temporary custody. In October 2018, the Agency moved for permanent custody. The trial court held a hearing after which it granted the Agency's motion, finding that a grant of permanent custody to CCDCFS was in M.M.'s best interest.

{¶ 3} Nine-year-old M.M. was initially placed into Agency custody after Mother showed up at M.M.'s school intoxicated and was arrested. The Agency developed a case plan, which included substance abuse services, including weekly drug and alcohol screens, mental health counseling, and a requirement to maintain housing. The goal of the case plan was reunification.[1]

{¶ 4} Mother completed inpatient substance abuse treatment in November 2016 and began intensive outpatient treatment. Mother was to complete intensive outpatient treatment in February 2017 but tested positive for marijuana. In March 2017, Mother filed a motion for increased visitation. The agency opposed the motion because Mother tested positive for marijuana the previous month and told her caseworker she would again test positive for marijuana in March. In April 2017, Mother was charged with driving under the influence.

{¶ 5} Mother completed another inpatient substance abuse treatment program in August 2017. She made progress on her case plan and CCDCFS filed a

---

[1]Father is deceased.

motion to terminate temporary custody with protective supervision. Mother's boyfriend contacted the Agency, concerned about reunification because Mother was drinking and had alcohol in the house. The Agency requested Mother take a drug and alcohol test; Mother tested positive for alcohol. Mother told her caseworker, Linda Yeldell ("Yeldell"), that she tested positive because she drank a bottle of Nyquil because she needed help sleeping after a recent dog bite. Yeldell was unable to verify Mother had been bitten by a dog.

{¶ 6} CCDCFS moved to withdraw its motion to terminate temporary custody. The Guardian Ad Litem ("GAL") filed a report recommending that the Agency continue temporary custody due to Mother's inability to maintain her sobriety.

{¶ 7} At a review hearing in June 2018, the court noted that Mother had recently submitted several negative urine screens but had failed to submit urine screens for the last two weeks. In August 2018, Mother had M.M. for overnight visitation but left the child alone so Mother could go out drinking. An incident occurred and Mother was subsequently arrested and charged with domestic violence and endangering children, with M.M. as the named victim. The court overseeing Mother's criminal case ordered her to have no contact with M.M., and Mother has not seen M.M. since September 2018.

{¶ 8} Although Mother began outpatient substance abuse treatment on more than one occasion, she had not successfully completed that program as of the date of the permanent custody hearing. Yeldell testified that Mother refused to sign

a release so that Yeldell could speak with Mother's probation officer about the results of Mother's drug and alcohol tests. Yeldell was concerned that Mother often waited two to three days to complete her drug and alcohol tests, even though the Agency requires clients to complete a test within 24 hours of being asked to take the test. Yeldell explained that the Agency looks at a delay in compliance as a "possible positive." The Agency had also received information and was therefore concerned that Mother was "manipulating the tests," which were not monitored, and put in a request to have her drug and alcohol tests monitored.

{¶ 9} Mother participated in mental health services to address her depression, anxiety, and borderline personality diagnoses. Yeldell testified that Mother was not always compliant with the mental health portion of her case plan. For example, Mother used her substance abuse provider to provide mental health counseling services for her, which was not allowed under Agency guidelines. In addition, one of Mother's mental health therapists discontinued therapy due to "an incident [with Mother] that occurred during their therapy session." As of the date of the permanent custody hearing, Mother had reengaged with an appropriate mental health counselor and was compliant with medication.

{¶ 10} Throughout the pendency of the case, Mother was unemployed but had housing.

{¶ 11} The GAL recommended that the court grant permanent custody of M.M. to the Agency, noting that M.M. had been in Agency custody for two and one-half years, that Mother has been given that amount of time to address her substance

abuse and mental health issues but was unable to maintain sobriety, and that there was no recent visitation due to the no-contact order.

{¶ 12} Yeldell testified that the Agency initially placed M.M. with her paternal aunt and uncle and she lived with them until December 2018 when she "disrupted" her placement. Yeldell testified that M.M. has serious behavioral problems, which required the removal from her placement with her aunt and uncle. M.M. currently lived in a residential treatment center, where she was receiving treatment for oppositional defiant disorder and reactive attachment disorder. The paternal aunt and uncle told the Agency that M.M. could return to their house when she was done with treatment; the aunt and uncle visit M.M. at the treatment center; and the aunt and uncle participate in counseling sessions with M.M. According to Yeldell, M.M. did not currently express an interest in visiting with her mother. Yeldell did not feel that Mother could handle M.M.'s behavior issues.

**Assignment of Error**

> I. The trial court abused its discretion in awarding permanent custody because the state did not present sufficient, clear, and convincing evidence necessary for the order.

**Law and Analysis**

{¶ 13} In her sole assignment of error, Mother claims that the court abused its discretion in terminating her parental rights.

{¶ 14} A trial court must make two determinations before granting permanent custody. First, it must find that one of the factors listed in R.C. 2151.414(B)(1)(a)-(e) exist. If the court finds one of those factors exists, then,

second, it must find that permanent custody is in the child's best interest under R.C. 2151.414(D)(1).

{¶ 15} The standard of proof to be used by the trial court in deciding a permanent custody case is clear and convincing evidence. The Ohio Supreme Court has defined clear and convincing evidence as

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986).

{¶ 16} This court will not reverse the judgment of the trial court when some competent, credible evidence supports its findings. *In re Z.D.*, 8th Dist. Cuyahoga No. 107878, 2019-Ohio-2337, ¶ 20, citing *In re Marano*, 4th Dist. Athens No. 04CA30, 2004-Ohio-6826, ¶ 12. Accordingly, we must determine if competent, credible evidence supports the trial court's findings regarding both the requirements of R.C. 2151.414(B)(1)(a)-(e) and the best interest of the child. *In re Z.D.* at *id.*

{¶ 17} As mentioned, only one of the factors under R.C. 2151.414(B)(1)(a)-(e) must exist to satisfy the first step in a permanent custody proceeding. One of those factors is whether the child has been in the temporary custody of one or more public children services agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). In this case, the trial court made that finding.

Mother does not challenge the court's finding and the record, on its face, clearly and convincingly supports the finding.

**{¶ 18}** Thus, the trial court's focus was whether permanent custody was in M.M.'s best interest. In making that determination, the trial court was required to "consider all relevant factors," including the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

**{¶ 19}** "[O]nly one of the best-interest-of-the-child factors needs to be present to grant an award of permanent custody." *In re Z.D.*, 8th Dist. Cuyahoga No. 107878, 2019-Ohio-2337, at ¶ 22, citing *In re S.C.*, 8th Dist. Cuyahoga No. 102350, 2015-Ohio-2410, ¶ 30.

**{¶ 20}** The trial court stated that it considered the best-interest factors, the GAL's report, and the following: (1) Mother was convicted of an offense listed in R.C.

2151.414(E)(6) or (E)(7); (2) Mother placed M.M. at substantial risk of harm due to alcohol or drug abuse after the case plan was issued two or more times; (3) Mother neglected M.M. and the seriousness, nature, or likelihood of recurrence of neglect makes M.M.'s placement with Mother a threat to the child's safety; and (4) M.M. has been in custody for over two years and does not qualify for another extension of temporary custody.

{¶ 21} Mother contends that there was not clear and convincing evidence to support the trial court's finding that permanent custody was in M.M.'s best interest. Mother claims that she was compliant with her case plan and the court's requirements and most of the concern dealt with M.M.'s behavior, which was out of Mother's control.

{¶ 22} We find no merit to Mother's contentions and find competent, credible evidence in the record that supports the trial court's findings that permanent custody is in M.M.'s best interest.

{¶ 23} The court noted R.C. 2151.414(D)(1)(a), which deals with the interaction and interrelationship of the child with significant individuals in the child's life, including parents, siblings, relatives, and foster caregivers. Yeldell testified that M.M. was placed with her paternal aunt and uncle at the time of removal and has a good relationship with them. M.M. remained in her aunt and uncle's care until December 2018, when she was placed into a residential treatment facility to address her behavioral issues. Her aunt and uncle visit with her at the residential facility, participate in counseling sessions, and have indicated a

willingness to have M.M. return to live with them once she completes treatment. Conversely, M.M. does not have a good relationship with Mother. M.M. has not expressed a desire to visit with Mother and has been "hesitant" to visit with Mother in the past due to Mother's history of substance abuse. Additionally, Mother was convicted of endangering M.M. and there is a no-contact order in place. Mother and M.M. have not visited since September 2018, and Yeldell testified that they would have to participate in family counseling prior to resuming visits even if the no-contact order was lifted.

{¶ 24} The court also considered 12-year-old M.M.'s wishes as expressed through her GAL, pursuant to R.C. 2151.414(D)(1)(b). The GAL reported that M.M. would rather live with her older sister or her paternal aunt, instead of Mother. While there are other relatives who are interested in being involved in M.M.'s life, no other relatives are willing or able to provide a permanent home for her.

{¶ 25} The court considered M.M.'s custodial placement pursuant to R.C. 2151.414(D)(1)(c) and (d) and noted that M.M. has been in agency custody for over two years, the Agency is unable to file for an additional extension of temporary custody, and Mother was unable to remedy the conditions that caused M.M. to be removed from her custody. Consequently, M.M. is in need of a legally secure placement that could only be achieved through a grant of permanent custody to CCDCFS.

{¶ 26} While there is some evidence that Mother worked to maintain her sobriety and wanted to parent M.M., she was unfortunately unable to show that she

could maintain her sobriety. Mother relapsed on more than one occasion, was convicted for child endangering in an incident involving M.M. and ordered to have no contact with the child, and was not compliant with drug and alcohol screens.

{¶ 27} Finally, pursuant to R.C. 2151.414(D)(1)(e), the court noted that, under R.C. 2151.414(E)(6) and (E)(7), Mother was convicted of endangering M.M.

{¶ 28} Again, the court only needed to find that one best interest factor weighs in favor of permanent custody. In this case, the trial court found that multiple factors weighed in the favor of permanent custody. We agree that there was competent, credible evidence in the record that supports those findings. Thus, we find that the trial court's finding that permanent custody was in the best interest of the child was supported by clear and convincing evidence.

{¶ 29} The sole assignment of error is overruled.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR