OPINION *Page 2 
{¶ 1} Appellant Darren Brown ("Father") appeals the January 31, 2007 Judgment Entry and the January 31, 2007 Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights, responsibilities and obligations with respect to his minor daughter, Uriah, and granted permanent custody of the child to the Stark County Department of Job and Family Services ("the Department").[1]
 STATEMENT OF THE CASE AND FACTS {¶ 2} On October 11, 2005, the Department filed a Complaint in the Stark County Court of Common Pleas, Family Court Division, seeking temporary custody of Uriah Warren (DOB 10/07/05). The Complaint was based upon the Department's receipt of a referral alleging Mother had given birth to Uriah while incarcerated at the Franklin County Pre-Release Center. Mother was serving a six month sentence after she was convicted of escape on June 21, 2005. Upon her incarceration, Mother advised prison officials she wanted relatives in Michigan to be considered for placement of the child. The Department contacted Michigan Child Protective Services prior to the birth in an attempt to have home studies completed, but Michigan refused to conduct the home studies until after the birth of the child. Mother had lost custody of three of her five other children to Michigan Child Protective Services. Nonetheless, Mother denied any protective services history to prison officials.
 {¶ 3} Prior to the birth of Uriah, Father requested the Department conduct a home study on his residence. The Department denied placement with Father based *Page 3 
upon his criminal history. Father had been paroled in June, 2003, after serving a ten year prison term in Michigan on a number of drug related charges. Father was released from parole in June, 2005, at which time he relocated to Stark County.
 {¶ 4} Based upon the allegations in the Complaint, the trial court placed Uriah in the emergency shelter care custody of the Department. The trial court subsequently appointed Lisa Weber to serve as guardian ad litem for Uriah. Via Judgment Entry filed November 9, 2005, the trial court found Uriah to be a dependant child and placed her in the temporary custody of the Department.
 {¶ 5} In March, 2006, genetic testing revealed Father was Uriah's biological father. The trial court conducted a Dispositional Review Hearing on April 6, 2006. The trial court found, although Father had established paternity, he had failed to attend Goodwill Parenting, address his drug abuse issues, and complete a Quest evaluation. The Department filed a Motion for Permanent Custody on August 8, 2006. At the time of the filing, Mother was incarcerated in a Michigan State Penal Institution, serving a term of imprisonment of eight to ten years on a child abuse conviction. Father was in the Stark County Jail, awaiting disposition on charges of possession of marijuana, trafficking in cocaine, having a weapon under disability, and trafficking in marijuana. The trial court conducted a hearing on the motion on January 17, 2007.
 {¶ 6} Linda Chambliss, a family services supervisor with the Department, testified the Department investigated relative placement at the time Uriah came into their care. Uriah's maternal grandfather was denied placement. After paternity was established in April, 2006, the Department approached Gwendolyn and Darvin Lynch. *Page 4 
Gwendolyn Lynch is Father's first cousin. According to Chambliss, the Lynches indicated their preference Uriah be placed with LaRhonda Ford, who is the mother of one of Father's other children. Ford lives in Michigan. The Department also considered Darlene Dillon, also of Michigan, who adopted two of Mother's other children. Because LaRhonda Ford expressed ambivalence about taking Uriah, the Department focused on Dillon, and requested Michigan conduct a home study. Chambliss noted interstate home studies usually take ninety days to complete, however, the Department did not receive the information until January, 2007, some six months later.
 {¶ 7} Chambliss testified the Lynches began visitation with Uriah in July, 2006, and indicated their interest in placement. The Department decided the sibling bond in Michigan was more important than placement with cousins; therefore, chose not to disrupt Uriah's placement in foster care until they received the interstate home study. Chambliss explained the Department policy is to maintain a sibling bond and keep siblings together as much as possible. On cross-examination, Chambliss conceded there was no sibling bond between Uriah and Darlene Dillon's children as Uriah had never met nor visited with her siblings. At the time of the hearing, Uriah and the Lynches were having weekly visits. Chambliss acknowledged Uriah was bonded with the Lynches.
 {¶ 8} Gwendolyn Lynch testified she is a neurologist and her husband, Darvin, is an insurance underwriter. The Lynches first learned of Uriah in early July, 2006. Dr. Lynch stated she and Darvin were contacted by Jennifer Finnegin of the Department to see if they were interested in meeting Uriah. Finnegin informed the Lynches Father had requested they be considered for adoption. The Lynches made arrangements to meet *Page 5 
Uriah. When they did the Department offered them the opportunity to take legal custody or pursue adoption. The Lynches advised the Department they would consider either option and were interested in having Uriah. However, the Lynches explained they wanted to discuss, as a family, the best thing for Uriah. Dr. Lynch testified she had learned Father's son, Darren Brown, Jr., was interested in having his sister placed with him. Dr. Lynch informed Finnegin if LaRhonda Ford, Brown, Jr.'s mother, was approved, they would follow Brown, Jr.'s wishes. Dr. Lynch added, if Ford was determined not to be eligible, they would be more than glad to pursue adopting Uriah.
 {¶ 9} Shortly after the Lynches' initial meeting with Uriah, Dr. Lynch had a telephone conversation with Finnegin, during which Finnegin told Dr. Lynch the Department was no longer considering the Lynches for adoption or legal custody. Dr. Lynch informed Finnegin she and her husband would proceed with taking foster care classes in order to be approved should they be able to take custody of Uriah in the future. The Lynches began weekly visitation with Uriah in October, 2006.
 {¶ 10} Gwendolyn Lynch stated she and her husband met with a psychologist and a counselor for advise on how to bond with Uriah. Dr. Lynch stated when they implemented the measures suggested by the professionals, they noticed a significant change with regard to their bonding with the child, and the child's bonding with them.
 {¶ 11} Following the hearing, the trial court permitted the parties to file written closing arguments. Via Judgment Entry filed January 31, 2007, the trial court terminated Father's parental rights, responsibilities and obligations with respect to Uriah, and granted permanent custody of the child to the Department. The trial court also issued Findings of Fact and Conclusions of Law on the same date, in which it *Page 6 
determined it was in Uriah's best interest to remain in Ohio and the Michigan placement option should be the last of the available choices. The trial court added, subsequent to the hearing, the Department changed its position and also agreed Uriah should not go to Michigan. The trial court further found it was in Uriah's best interest to grant permanent custody to the Department.
 {¶ 12} It is from this Judgment Entry as well as the trial court's Findings of Fact and Conclusions of Law Father appeals, raising the following assignments of error:
 {¶ 13} "I. WHETHER THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY BASED UPON SCDJFS' LACK OF REASONABLE EFFORTS TO FACILITATE RELATIVE PLACEMENT.
 {¶ 14} "II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY NOT GRANTING LEGAL CUSTODY TO A SUITABLE MEMBER OF THE CHILD'S EXTENDED FAMILY.
 {¶ 15} "III. WHETHER THE TRIAL COURT'S FINDING THAT IT IS IN THE CHILDREN'S BEST INTEREST THAT PERMANENT CUSTODY BE GRANTED TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 16} "IV. WHETHER THE TRIAL COURT'S ERRED IN DENYING THE FATHER'S RELATIVES MOTION TO INTERVENE AS PARTIES IN THE THIS [SIC] MATTER.
 {¶ 17} "V. THE TRIAL COURT ERRED IN ALLOWING THE GUARDIAN AD LITEM TO SUBMIT A CLOSING ARGUMENT AFTER THE TIME OF THE HEARING AND FURTHER MAKING A FINDING ON PAGE 15 OF THE JUDGEMENT [SIC] IN *Page 7 
PARAGRAPH #7 THAT "THE GUARDIAN AD LITEM RECOMMENDS PERMANENT CUSTODY OF URIAH WARRANT TO THE SCDJFS."
 {¶ 18} The case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.1(C).
 I {¶ 19} In his first assignment of error, Father contends the trial court erred in granting permanent custody to the Department because the Department failed to use reasonable efforts to facilitate relative placement. Specifically, Father argues the Department "blatantly disregarded the sequence of priority" regarding the placement of the child as set forth in R.C. 2151.412(G).
 {¶ 20} R.C. 2151.412(G) sets forth the general priorities to be applied by a public children's services agency with regard to case plans. R.C. 2151.412(G)(2) provides if a child cannot be placed in the legal custody of his parents, the child should be placed "in the legal custody of a suitable member of the child's extended family[.]" However, "Ohio's Courts have consistently recognized the language in R.C.2151.412(G) is precatory, not mandatory * * * [R.C. 2151.412] does not command the juvenile court to act in a specific manner. Instead, the statute sets out general, discretionary priorities to guide the court. So while the guidelines may be helpful to the juvenile court, it is not obligated to follow them". See, In Re: Halstead, Columbiana App. No. 04CO37, 2005-Ohio-403; In Re: Hyatt (1993), 86 Ohio App.3d 716, 722.
 {¶ 21} With respect to the Department's duty to use reasonable efforts, we note no one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, *Page 8 
"whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit. For example, R.C. 2151.412 requires the agency to prepare and maintain a case plan for children in temporary custody with the goal "[t]o eliminate with all due speed the need for the out-of-home placement so that the child can safely return home." Under R.C. 2151.413(D)(3)(b), an agency may not file for permanent custody under R.C. 2151.413(D)-the "12 months out of 22" rule-"[i]f reasonable efforts to return the child to the child's home are required under section 2151.419" and the agency has not provided the services required by the case plan. See, also, R.C.2151.414(E)(1) (child may be placed with agency when, notwithstanding reasonable case planning and diligent efforts by the agency, parents fail to remedy problems that caused removal of child); and R.C. 2151.419
("The agency shall have the burden of proving that it has made [the required] reasonable efforts" to prevent the child's removal or to return the child).
 {¶ 22} Ohio's Department of Job and Family Services has promulgated regulations that describe reasonable efforts in great detail. Ohio Adm. Code 5101:2-39-05. In addition, the Ohio Rules of Juvenile Procedure require that "[i]n any proceeding involving abuse, neglect, or dependency at which the court removes a child from the child's home or continues the removal of a child from the child's home, * * * the court shall determine whether the person who filed the complaint in the case and removed the child from the child's home * * * has made reasonable efforts to * * * (a) Prevent the removal of the child from the child's home; (b) Eliminate the continued removal of the *Page 9 
child from the child's home; [or] (c) Make it possible for the child to return home." Juv.R. 27(B)(1).
 {¶ 23} Based upon the foregoing, we find the Department's duty to use reasonable efforts applies only to efforts to avoid removal of a child from her home or to reunify the child with her family, following removal. The Department is under no statutory duty to make reasonable efforts to place a child with relatives although relative placement is to be investigated. Accordingly, we find the trial court did not err in granting permanent custody because the Department was not required to make reasonable efforts to facilitate placement of Uriah with the Lynches. From our review it seems the Department did investigate relative placement.
 {¶ 24} Father's first assignment of error is overruled.
 II, III {¶ 25} Because Father's second and third assignments of error require similar analysis, we shall address said assignments of error together. In his second assignment of error, Father maintains the trial court abused its discretion in failing to grant legal custody of Uriah to a suitable member of her extended family.[2] In his third assignment of error, Father challenges, as against the manifest weight of the evidence, the trial court's finding it was in Uriah's best interest to grant permanent custody to the Department.
 {¶ 26} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, *Page 10 
competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. CE.Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 27} Furthermore, it is well-established "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In reMauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In reAwkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 28} R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to a public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 29} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, *Page 11 
including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 30} In In re Schaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, the Ohio Supreme Court clearly found a trial court's statutory duty in determining whether it is in the best interest of a child to grant permanent custody to an agency does not include finding, by clear and convincing evidence, no suitable relative is available for placement. The statute requires the trial court to weigh all relevant factors. R.C.2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement which would not require a termination of parental rights an all-controlling factor nor require the court to weigh that factor more heavily than other factors. Schaeffer at ¶ 64.
 {¶ 31} In the instant action, the trial court did consider placement of Uriah with the Lynches. The fact the trial court chose not to grant them custody was not an abuse of discretion. Further, the trial court's finding it was in the child's best interest to create immediate permanency in her life through granting permanent custody to the Department was not against the manifest weight of the evidence.
 {¶ 32} Father's second and third assignments of error are overruled. *Page 12 
 IV {¶ 33} In his fourth assignment of error, Father submits the trial court erred in denying the Lynches' motion to intervene. We need not reach the merits of this assignment of error as Father lacks standing to appeal this order. See, In Re: Cunningham Children, Stark App. 2003CA00054, 2003-Ohio-2805.
 V {¶ 34} In his final assignment of error, Father asserts the trial court erred in allowing the guardian ad litem to submit a closing argument following the completion of the hearing, and, thereafter making a finding the guardian recommended permanent custody to the Department.
 {¶ 35} It is well established a trial court has broad discretion in the admission or exclusion of a guardian ad litem's report. As long as such discretion is exercised in line with the rules and procedures of evidence, the trial court's judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice.Rigby v. Lake County (1991) 58 Ohio St.3d 269, 271. The term "abuse of discretion" connotes more than an error of law or judgment; it implies the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 36} At the close of the hearing, the guardian ad litem requested the trial court give her until the following Monday to submit additional recommendations based upon the testimony presented at the hearing. Neither counsel nor the parties objected to the guardian's request. In her closing statement, the guardian concluded, "My recommendation, based solely on her best interest is that first, she stay with the only *Page 13 
family she has known, second that she go with a family she has begun to forge ties with, and last, that she be sent to Michigan." Guardian's Closing Statement at 3-4, unpaginated. In its Findings of Fact, the trial court specifically found, "The Guardian ad Litem recommends Permanent Custody of Uriah Warren to the [Department]." Judgment Entry at 15.
 {¶ 37} The guardian's closing statement did not expressly recommend permanent custody of Uriah to the Department. Although the trial court may have erroneously made the finding regarding the guardian's recommendation of permanent custody, we find Father cannot show prejudice from such error based upon the trial court's findings relative to whether Uriah could not or should not be placed with Father. Such error may have been prejudicial to the Lynches, however, Father does not have standing to raise such error.
 {¶ 38} Father's fifth assignment of error is overruled.
 {¶ 39} The judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed.
 By: Hoffman, P.J., Farmer, J., and Delaney, J. concur *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to Appellant.
[1] Patrice Warren, Uriah's mother, is not a party to this appeal.
[2] In this regard, Father's argument is essentially the same made under his first assignment of error. We have already found R.C. 2151.4122(G) is precatory, not mandatory, in our discussion of that assignment. *Page 1