[Cite as *In re K.M.D.*, 2012-Ohio-755.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| In the Matter of: | : | |
| | : | |
| K.M.D. | : | |
| | : | Case No. 11CA3289 |
| Adjudicated Dependent Child. | : | |
| | : | DECISION AND |
| | : | JUDGMENT ENTRY |
| | : | |
| | : | Filed: February 24, 2012 |

_____

APPEARANCES:

Robert W. Bright, Middleport, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jennifer L. Ater, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

Kline, J.:

{¶1}    M.D. (hereinafter "Father") appeals the judgment of the Ross County Court of Common Pleas, Juvenile Division. Following a hearing, the trial court entered an order that granted Ross County Job and Family Services' (hereinafter the "Agency") motion for permanent custody of Father's daughter, K.M.D. (hereinafter "Child"). On appeal, Father first contends that the trial court erred when it determined that granting the Agency's motion for permanent custody of Child was in Child's best interest. Because there is competent, credible evidence supporting the trial court's decision, we disagree. Next, Father contends that the trial court erred by denying his motions for a continuance so that the Agency could investigate Child's paternal grandfather as a placement option for Child. Because the trial court did not abuse its discretion when it

denied Father's motions for a continuance, we disagree.  Next, Father contends that the trial court erred by failing to hold the Agency in contempt for not completing its home investigation of Child's paternal grandfather, despite the magistrate's order that the Agency should conduct the investigation.  Because Father cannot show that the trial court's failure to hold the Agency in contempt was plain error, we disagree.  Next, Father contends that the trial court erred by not placing Child with her paternal grandfather.  Because (1) placing Child with her paternal grandfather was not an issue before the trial court and (2) competent, credible evidence supports the trial court's decision to grant the Agency's motion for permanent custody of Child, we disagree. Next, Father contends that the trial court erred by failing to find that the Agency did not make reasonable efforts to investigate Child's paternal grandfather as a potential placement for Child.  We disagree for two reasons.  First, the Agency did not have a statutory duty to investigate Child's paternal grandfather as a potential placement for Child before obtaining permanent custody.  And second, competent, credible evidence supports the trial court's finding that the Agency did make reasonable efforts to place Child with a relative.  Next, Father contends that the trial court erred in finding that Child's paternal grandfather did not show any interest in working with the Agency. Because competent, credible evidence supports the trial court's finding that Child's paternal grandfather did not show any interest in cooperating with the Agency when the Agency contacted him shortly after Child's birth, we disagree.  Next, Father contends that the trial court erred when it determined that, even though the Agency did not complete a home investigation of Child's paternal grandfather, Child's paternal grandfather introduced all relevant information when he testified at the July 14, 2011

permanent custody hearing.  Because Father has not articulated any additional information that could have been introduced at the hearing had the Agency conducted its home investigation of Child's paternal grandfather, we disagree.  Finally, Father contends that he received ineffective assistance of counsel at the permanent custody hearing.  Because Father cannot demonstrate that he was prejudiced by any alleged deficient performance by his trial counsel, we disagree.

{¶2}    Accordingly, we affirm the judgment of the trial court.

I.

{¶3}    H.S. (hereinafter "Mother") gave birth to Child in a motel bathroom on October 1, 2010.  Child was born addicted to opiates due to Mother's prenatal drug use.  On October 4, 2010, Child was placed in the temporary custody of the Agency, and Child has been in the continuous custody and care of the Agency since that time.

{¶4}    Shortly after her birth, Child was taken to a hospital.  Child spent the first several weeks of her life suffering from withdrawal due to her addiction to opiates.  She was released from the hospital on December 14, 2010, and she was placed into the care of her foster parents, R.P. and T.P.  Child has lived with her foster parents since her release from the hospital.

{¶5}    Mother and Father have had essentially no contact with Child since her birth. The record indicates that Mother was arrested near the end of October 2010, on a drug charge, and she was released from jail on June 6, 2011.  Mother's contact with Child has been sporadic since her release from jail.  The Agency developed a case plan for Mother.  The goals of the case plan were (1) for Mother to seek substance abuse counseling and remain drug free and (2) for Mother to meet Child's basic needs.  As of

the date of the permanent custody hearing, Mother had not completed her case plan, and she had not maintained regular contact with the Agency. Mother did not attend the permanent custody hearing, and Mother did not provide the Agency with an address where she could be contacted. Father was in prison on a felony drug conviction at the time of Child's birth. Father's sentence runs until February 17, 2013. Father has two previous drug convictions. Additionally, Mother and Father are the parents of two other children. Mother and Father had their parental rights to those children involuntarily terminated in April of 2010.

{¶6} On December 1, 2010, Child was adjudicated an "abused child" based on Mother's prenatal drug use. And on December 4, 2010, the Agency moved for permanent custody of Child under R.C. 2151.413. A hearing on the permanent custody motion was held before a magistrate on July 14, 2011. On August 8, 2011, the magistrate issued a decision granting the Agency's motion for permanent custody. Father filed timely objections to the magistrate's decision. On September 8, 2011, the trial court entered an order requesting clarification of certain issues from the magistrate, and the magistrate issued her clarification decision on September 9, 2011.

{¶7} On September 15, 2011, the trial court issued an Entry, which incorporated and adopted both the magistrate's August 8, 2011 and September 9, 2011 decisions. The September 15, 2011 Entry terminated Mother and Father's parental rights and responsibilities as to Child and granted the Agency's motion for permanent custody of Child.

{¶8}    Father appeals and asserts the following assignments of error:[1] I. "THE TRIAL COURT ERRED BY FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD."  II. A. "THE TRIAL COURT ERRED IN REFUSING TO GRANT A CONTINUANCE ON TWO (2) OCCASIONS SO THAT APPELLANT'S FATHER ('GRANDFATHER') COULD BE SERIOUSLY CONSIDERED AS A PLACEMENT AND/OR CUSTODIAN FOR THE MINOR CHILD."  II. B. "THE TRIAL COURT ERRED IN FAILING TO HOLD CHILDREN'S SERVICES IN CONTEMPT FOR FAILURE TO COMPLY WITH THE COURT'S ORDER TO CONDUCT A HOME STUDY RELATED TO GRANDFATHER."  II. C. "THE TRIAL COURT ERRED IN REFUSING TO PLACE THE MINOR CHILD WITH APPELLANT'S FATHER ('GRANDFATHER') AS A POTENTIAL PLACEMENT FOR THE MINOR CHILD."  II. D. "THE TRIAL COURT ERRED IN FAILING TO FIND THAT CHILDREN'S SERVICES DID NOT MAKE REASONABLE EFFORTS TO INVESTIGATE APPELLANT'S FATHER ('GRANDFATHER') AS A POTENTIAL PLACEMENT FOR THE MINOR CHILD."  II. E. "THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S FATHER ('GRANDFATHER') DID NOT SHOW ANY INTEREST IN WORKING WITH CHILDREN'S SERVICES."  II. F. "THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S FATHER ('GRANDFATHER') INTRODUCED ALL RELEVANT INFORMATION AND EVIDENCE THROUGH HIS TESTIMONY AT THE HEARING." And, III. "THE FATHER M.D. RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."

---

[1] We note that, in his brief, Father lists his second assignment of error as "ISSUES RELATED TO APPELLANT'S FATHER ('GRANDFATHER')".  And under that assignment of error, Father lists six reasons (lettered A – F) why the trial court's decision should be reversed.  We will list all six arguments here, and we will address each argument in the section below devoted to Father's second assignment of error.

II.

**{¶9}** In his first assignment of error, Father argues that the trial court erred by finding that permanent custody was in the best interest of Child.

**{¶10}** A parent's "interest in the care, custody, and control of [his or her] children 'is perhaps the oldest of the fundamental liberty interests[.]'" *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 8, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Further, "[p]ermanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.'" *In re D.A.*, 2007-Ohio-1105, ¶ 10, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). As such, "parents 'must be afforded every procedural and substantive protection the law allows.'" *In re D.A.*, 2007-Ohio-1105, ¶ 10, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). "'[I]t is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App.1974).

**{¶11}** "A public or private child-placement agency may file a motion under R.C. 2151.413(A) to request permanent custody of a child after a court has committed the child to the temporary custody of the agency pursuant to R.C. 2151.353(A)(2)." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 22. Once a motion is filed under R.C. 2151.413(A), the court must follow R.C. 2151.414. *Id.*

**{¶12}** A trial court may grant the agency's motion for permanent custody if it determines by clear and convincing evidence that: (1) one of the four conditions outlined

in R.C. 2151.414(B)(1)(a)-(d) applies; and (2) it is in the child's best interest. R.C. 2151.414(B)(1); *In re McCain*, 4th Dist. No. 06CA654, 2007-Ohio-1429, ¶ 13. "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104, 495 N.E.2d 23 (1986). Thus, "[i]t is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Id.*

**{¶13}** We will not reverse the judgment of the trial court in a permanent custody case when some competent, credible evidence supports the trial court's findings. *In re Marano*, 4th Dist. No. 04CA30, 2004-Ohio-6826, ¶ 12. "We give the trial court's final determination 'the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *Id.*, quoting *In re Alfrey*, 2d Dist. No. 01CA0083, 2003-Ohio-608, ¶ 102.

**{¶14}** Accordingly, we must determine if competent, credible evidence supports the trial court's findings regarding both the best interest of the child and the requirements of R.C. 2151.414(B)(1)(a)-(d). *In re D.N.*, 4th Dist. No. 11CA3213, 2011-Ohio-3395, ¶ 17.

A.

**{¶15}** First, we must address whether Father has waived any arguments under his first assignment of error. "The juvenile rules require written objections to a magistrate's decision to be filed within 14 days of the decision." *In re D.S.*, 12th Dist. Nos. CA2010-08-058, CA2010-08-064, & CA2010-08-065, 2011-Ohio-1279, ¶ 31, citing

Juv.R. 40(D)(3)(b)(i). Under Juv.R. 40(D)(3)(b)(iv), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." This "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal." *In re D.S.*, 2011-Ohio-1279, ¶ 31, citing *In re Etter*, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998). Objections under Juv.R. 40(D)(3)(b)(i) "must be 'specific' and must 'state with particularity all grounds for objection.'" *In re D.S.*, 2011-Ohio-1279, ¶ 31, quoting Juv.R. 40(D)(3)(b)(ii). The "[f]ailure to file specific objections is treated the same as the failure to file any objections." *In re D.R.*, 12th Dist. No. CA2009-01-018, 2009-Ohio-2805, ¶ 29. *See also In re D.N.*, 2011-Ohio-3395, ¶ 18.

**{¶16}** In challenging the trial court's determination that permanent custody is in Child's best interest, Father argues that the trial court erred in finding that "[Child] cannot and should not be reunited with either parent." Sept. 15, 2011 Entry (adopting and incorporating Magistrate's Aug. 8, 2011 Decision). Father did not specifically object to this finding before the trial court. Consequently, we review this particular argument under a plain error standard.

**{¶17}** "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the

legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶18} We conclude that the trial court did not err, much less commit plain error, in finding that Child cannot and should not be reunited with either parent. Initially, we note that the determination of whether a child cannot or should not be reunited with either parent is not part of the best-interest-of-the-child analysis in a permanent custody case. As indicated above, under R.C. 2151.414(B)(1), a trial court may grant the agency's motion for permanent custody if it determines by clear and convincing evidence that: (1) one of the four conditions outlined in R.C. 2151.414(B)(1)(a)-(d) applies; and (2) it is in the child's best interest.

{¶19} Specifically, R.C. 2151.414(B)(1)(a)-(d) provides as follows:

Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that *it is in the best interest of the child* to grant permanent custody of the child to the agency that filed the motion for permanent custody *and* that *any of the following apply*:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as

described in [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state, and *the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.*

(b) The child is abandoned;

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state.  (Emphasis added.)

**{¶20}**  Here, R.C. 2151.414(B)(1)(a) applies, and the determination of whether Child cannot or should not be reunited with her parents is part of that analysis (i.e., it is not part of the best-interest-of-the-child analysis).

**{¶21}**  As of July 14, 2011 hearing, Child "[was] not abandoned or orphaned, [had] not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or [had] not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more

months of a consecutive twenty-two-month period if, as described in [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state." R.C. 2151.414(B)(1)(a).

**{¶22}** Furthermore, the trial court found that "[Child] cannot and should not be reunited with either parent." Sept. 15, 2011 Entry (adopting and incorporating Magistrate's Aug. 8, 2011 Decision).

**{¶23}** The record supports the trial court's finding that Child cannot and should not be reunited with either parent based on R.C. 2151.414(E). That statute enumerates circumstances under which a trial court *must* find that a child cannot be placed with either parent in a reasonable time or should not be placed with either parent. Specifically, R.C. 2151.414(E) provides, in relevant part, as follows:

> If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, *the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent*: * * * (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * * (12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody

or the dispositional hearing.  (Emphasis added.)  R.C. 2151.414(E)(4) & (12).

{¶24}  Regarding Father, R.C. 2151.414(E)(12) applies.  Father's release date from prison is February 17, 2013, which is approximately nineteen (19) months from the July 14, 2011 hearing.  Therefore, as of the July 14, 2011 hearing, "[Father was] incarcerated at the time of * * * the dispositional hearing of the child and [would] not be available to care for the child for at least eighteen months after * * * the dispositional hearing."  R.C. 2151.414(E)(12).

{¶25}  In challenging the trial court's finding that Child cannot and should not be reunited with either parent, Father argues that the trial court failed to consider the possibility of Father obtaining judicial release from prison.  Father previously applied for judicial release, but the trial court denied his application.  However, based on the trial court's statements when denying his application, Father asserts the trial court will "seriously consider" granting a second application once Father completes a program that Father has enrolled in while in prison.   Appellant's Brief at 10-11.  Thus, Father argues that he could be out of prison within months of the hearing, and, therefore, reunited with Child in a reasonable time.

{¶26}  Father's argument, however, is based on pure speculation regarding the action the trial court may or may not take in considering Father's application for judicial release.  There is no guarantee (1) that Father will complete the program he enrolled in or (2) that, even if he does complete the program, he will obtain judicial release from prison.  Thus, Father cannot show that he could be or should be reunited with Child in a reasonable time.

{¶27} Regarding Mother, R.C. 2151.414(E)(4) applies. Child was born addicted to opiates based on Mother's drug use during her pregnancy. As a result, Child was adjudicated an abused child. Additionally, Mother has not maintained contact with the Agency regarding her efforts to rehabilitate her substance abuse problems. Mother's contact with Child has been sporadic at best. As of the July 14, 2011 hearing, Mother did not have a known address. Furthermore, Mother did not attend the July 14, 2011 hearing. Consequently, "[Mother] has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]" R.C. 2151.414(E)(4).

{¶28} Thus, the record demonstrates that R.C. 2151.414(E)(12) applied to Father, and R.C. 2151.414(E)(12) applied to Mother. As a result, we conclude that the trial court did not err, much less commit plain error, in finding that Child cannot and should not be reunited with either parent. Therefore, R.C. 2151.414(B)(1)(a) of the permanent-custody analysis was satisfied.

B.

{¶29} We now turn to the remainder of Father's argument that the trial court erred in finding that permanent custody was in Child's best interest.

{¶30} Father contends that the trial court erred because the four requirements of R.C. 2151.414(D)(2) cannot be satisfied. Father's argument, however, ignores the plain language of the statute. R.C. 2151.414(D)(2) provides, in pertinent part, as follows: "If *all* of the following apply, permanent custody *is* in the best interest of the child *and* the court *shall* commit the child to the permanent custody of a public children services

agency or private child placing agency[.]" (Emphasis added.) Under the plain language

of the statute, if the requirements of R.C. 2151.414(D)(2) are satisfied, then the trial

court must grant the permanent custody motion. That does not mean, however, that

permanent custody is in a child's best interest *only if* the requirements of R.C.

2151.414(D)(2) are satisfied. Thus, Father's arguments that the trial court erred based

on an inability to satisfy the requirements of R.C. 2151.414(D)(2) must fail.

**{¶31}** Here, R.C. 2151.414(D)(1) governs the best-interest-of-the-child analysis,

and that statute provides as follows:

> In determining the best interest of a child * * * the court shall consider all
>
> relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's
>
> parents, siblings, relatives, foster caregivers and out-of-home providers,
>
> and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through
>
> the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been
>
> in the temporary custody of one or more public children services agencies
>
> or private child placing agencies for twelve or more months of a
>
> consecutive twenty-two-month period, or the child has been in the
>
> temporary custody of one or more public children services agencies or
>
> private child placing agencies for twelve or more months of a consecutive
>
> twenty-two-month period and, as described in [R.C. 2151.413(D)], the

child was previously in the temporary custody of an equivalent agency in

another state;

(d) The child's need for a legally secure permanent placement and

whether that type of placement can be achieved without a grant of

permanent custody to the agency;

(e) Whether any of the factors in [R.C. 2151.414(E)(7) to (11)] in relation

to the parents and child.

**{¶32}**  The evidence supports the trial court's determination that permanent

custody is in Child's best interest.  As indicated above, Child spent the first several

weeks of life in the hospital as she suffered from withdrawal caused by being born

addicted to opiates.  Child was then placed in the care of her foster parents, R.P. and

T.P., and Child has been in her foster parents' care ever since her release from the

hospital.  Child's foster mother, T.P., testified that Child has been thriving in her foster

parents' home.  Child's caseworker also testified that Child was thriving while in the care

of her foster parents.  T.P. testified that Child has bonded with her entire foster family

(i.e., T.P., R.P., Child's foster brother, and Child's foster grandmother).  T.P. also

testified that Child has exceeded developmental milestones while in the care of her

foster parents.  Furthermore, T.P. testified that she and R.P. own their home and are

financially secure.  Additionally, T.P. testified that she and R.P. plan on adopting Child.

**{¶33}**  The trial court determined that Child "[was] in need of a legally secure

permanent placement which [could not] be obtained without a grant of permanent

custody to the agency."  Sept. 15, 2011 Entry (adopting and incorporating Magistrate's

Aug. 8, 2011 Decision).  The court also determined that "[t]he conditions giving rise to

the child's removal have not been remedied." *Id.* at 1.  And although Child is too young to express her wishes, Child's guardian ad litem recommended that the trial court grant the Agency's motion for permanent custody of Child.

**{¶34}** Additionally, Child has had little or no interaction with Mother, Father, or any relative of Mother or Father since birth.  Father has been in prison, and the evidence demonstrated that, other than filling out some paperwork, Father did little to contact the Agency regarding Child.  Mother's involvement in Child's life has been minimal.  And in addition to not attending the permanent custody hearing, Mother's address was not known at time of the hearing.

**{¶35}** Father argues at length that the trial court should have placed Child in the temporary care of A.B., Child's paternal grandfather.  A.B. testified at the hearing that he owns his home and that he has been employed with the City of Columbus for many years.  A.B. also testified that he was willing to care for Child.  The evidence, however, demonstrates that A.B. had done little, if anything, to initiate contact with Child, despite being contacted regarding Child shortly after Child's birth.  In fact, A.B. admitted at the hearing that he never "went to visit [Child] or [tried] to arrange a visit with [Child.]"  Tr. at 52-53.  Additionally, the trial court found that A.B. did not cooperate with the Agency's attempts to investigate A.B. as a possible placement option prior to the July 14, 2011 hearing.  (We will discuss Father's challenges to this finding in more detail under Father's second assignment of error.)  Moreover, the Agency investigated the possibility of placing Child with other relatives, but the Agency was unable to find a suitable placement for Child.

**{¶36}** Considering the reasons stated above, there was competent credible evidence to support the trial court's conclusion that granting the permanent custody motion was in Child's best interest. Accordingly, we overrule Father's first assignment of error.

III.

**{¶37}** In his second assignment of error, Father advances several arguments that the trial court erred based on "issues" relating to A.B. For ease of analysis, we will address Father's arguments relating to A.B. in a different order than Father lists them in his Appellant's brief.

A.

**{¶38}** We begin with Father's argument that the trial court erred in finding that A.B. "did not show any interest in working with [the Agency] when contacted in October 2010." Magistrate's Aug. 8, 2011 Dec. at 1. As stated above, we will uphold the trial court's finding as long as some competent, credible evidence supports it. *In re Marano*, 2004-Ohio-6826, ¶ 12.

**{¶39}** Shortly after Child's birth, the caseworker assigned to Child's case explored relative placement for Child, and she contacted A.B. in October 2010, to obtain information about A.B. The caseworker testified that A.B. would not provide her with the information she requested. Instead, A.B. informed the caseworker that she could get his information from "Franklin County." (Presumably, A.B. was referring to information that Franklin County Job and Family Services would have as a result of the termination of Mother and Father's parental rights for their other two children in that county.) The caseworker also testified that, during this conversation, A.B. refused to provide either

his date of birth or his social security number to assist the caseworker in her effort. Furthermore, the caseworker testified that Franklin County officials did not have any information on A.B.

{¶40} A.B. claimed that he did not remember the conversation with the caseworker. A.B. testified that, at some point, he contacted the Agency, but he got the "run around." Tr. at 45-46. A.B., however, could not name anyone at the Agency with whom he spoke. Additionally, when asked whether he told the caseworker that she could get his information from Franklin County, A.B. testified, "Maybe I did. But I don't remember saying it." Tr. at 53. The trial court determined that "[a]t best, [A.B.'s] testimony was confused and inconsistent, if not evasive." Sept. 15, 2011 Entry at 2.

{¶41} Thus, there was some competent credible evidence to support the trial court's finding that A.B. "did not show any interest in working with [the Agency] when contacted in October 2010[.]" Consequently, we cannot conclude that the trial court erred when it made this finding.

B.

{¶42} Next, we consider Father's arguments that the trial court erred by failing to find that the Agency did not make reasonable efforts to investigate A.B. as a potential placement for Child.

{¶43} We recently rejected a similar argument in *In re M.O.*, 4th Dist. No. 10CA3189, 2011-Ohio-2011. As we observed, "a public children services agency has no statutory duty to make 'reasonable efforts' to place the child with an extended family member before it can obtain permanent custody of the child." *Id.* at ¶ 16. *See also In re Warren*, 5th Dist. No. 2007CA00054, 2007-Ohio-5703, ¶ 23 ("[T]he Department's duty

to use reasonable efforts applies only to efforts to avoid removal of a child from her home or to reunify the child with her family, following removal.  The Department is under no statutory duty to make reasonable efforts to place a child with relatives although relative placement is to be investigated."); *In re D.N.*, 2011-Ohio-3395, ¶ 24.

**{¶44}**  We also note that the trial court determined that the Agency did make reasonable efforts to place Child with a relative.  As indicated above, the Agency attempted to contact A.B. to investigate potentially placing Child with him, but A.B. was not cooperative.  Additionally, the caseworker was unable to obtain information regarding A.B. from Franklin County officials, despite A.B.'s assertion that the Agency could obtain information about him from "Franklin County."  The evidence also shows that the Agency contacted one of Child's aunts.  The aunt was initially cooperative, but then she cancelled a scheduled home visit due to illness.  And the Agency was unable to reschedule the visit.  Additionally, the record indicates that the Agency investigated placing Child with her maternal grandmother.  Child's maternal grandmother, however, ultimately decided that she did not want Child placed in her care.  Thus, there was competent, credible evidence supporting the trial court's finding that the Agency "made reasonable efforts" to place Child with a relative.  Accordingly, Father's argument that the trial court erred in failing to find that the Agency did not make reasonable efforts to investigate A.B. as a potential placement for Child lacks merit.

C.

**{¶45}**  Father also argues that the trial court erred by not placing Child with A.B. Father's argument, however, misstates the nature of the proceeding before the trial

court. After Child was adjudicated an abused child as a result of being born addicted to opiates, the Agency moved for permanent custody of Child under R.C. 2151.413.

**{¶46}** As discussed in Father's first assignment of error, the trial court could grant the Agency's motion for permanent custody under R.C. 2151.414(B)(1) if it determined by clear and convincing evidence that: (1) one of the four conditions outlined in R.C. 2151.414(B)(1)(a)-(d) applied; and (2) it was in the child's best interest. *See* R.C. 2151.414(B)(1); *In re McCain*, 2007-Ohio-1429, ¶ 13. And as detailed above, there was competent, credible evidence demonstrating that R.C. 2151.414(B)(1)(a) applied and that permanent custody was in Child's best interest. Thus, Father's argument that the trial court erred by not placing Child with A.B. is not applicable to the issues the trial court had to determine at the July 14, 2011 hearing. As we concluded above, the trial court did not err in granting the Agency's motion for permanent custody of Child. Accordingly, Father's argument that the trial court erred by not placing Child with A.B. lacks merit.

D.

**{¶47}** Father contends that the trial court erred in finding that A.B. introduced all relevant information and evidence through his testimony at the July 14, 2011 hearing. At the hearing, A.B. testified regarding his desire to have Child placed in his care. A.B. also testified about his living and financial circumstances. Father argues that additional information would be available had the Agency conducted its home investigation of A.B. On appeal, however, Father does not indicate what additional information could have been obtained at the hearing had the Agency conducted a home investigation of A.B.

Consequently, we cannot conclude that the trial erred in finding that A.B. introduced all relevant information and evidence when he testified at the July 14, 2011 hearing.

E.

**{¶48}** Father contends that the trial court erred in refusing to grant a continuance on two occasions so that A.B.'s home could be considered as a placement option for Child.

**{¶49}** We review a trial court's decision regarding whether or not to grant a motion for a continuance under an abuse of discretion standard. *Labonte v. Labonte*, 4th Dist. No. 07CA15, 2008-Ohio-5086, ¶ 9. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "[W]hen applying the abuse of discretion standard, we may not substitute our judgment for that of the trial court." *Labonte* at ¶ 9, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1993).

**{¶50}** "Our review of a denial of a motion for a continuance requires us to 'apply a balancing test, thereby weighing the trial court's interest in controlling its own docket, including the efficient dispensation of justice, versus the potential prejudice to the moving party.'" *Foley v. Foley*, 10th Dist. Nos. 05AP-242 & 05AP-463, 2006-Ohio-946, ¶ 16, quoting *Fiocca v. Fiocca*, 10th Dist. No. 04AP-962, 2005-Ohio-2199, ¶ 7.

**{¶51}** "In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court;

whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case." *State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981). Although *Unger* was a criminal matter, appellate courts have also applied these factors in civil cases. *See, e.g.*, *King v. Kelly*, 4th Dist. No. 02CA42, 2003-Ohio-4412, ¶ 11; *Henson v. Highland Dist. Hosp.*, 143 Ohio App.3d 699, 707, fn. 4, 758 N.E.2d 1166 (4th Dist.2001); *Integrated Payment Systems, Inc. v. A & M 87th Inc.*, 8th Dist. Nos. 91454 & 91473, 2009-Ohio-2715, ¶ 73; *Truex v. Truex*, 179 Ohio App.3d 188, 2008-Ohio-5690, 901 N.E.2d 259 (5th Dist.) ¶ 15.

{¶52} On July 7, 2011, Father moved to continue the July 14, 2011 hearing so that the Agency could investigate A.B. as a possible placement option. The magistrate denied this motion, but she ordered the Agency to investigate A.B. as a placement option. The record indicates that the investigation was not completed prior to the July 14, 2011 hearing. At the beginning of the July 14, 2011 hearing, Father moved for a continuance. However, Father's stated reason for requesting the continuance did not pertain to the Agency investigating A.B. as a placement option. Instead, Father sought a continuance so that A.B. could file a motion for legal custody of Child. The magistrate denied this continuance as well.

{¶53} As the trial court noted, the magistrate was not aware of the Agency's earlier attempts to investigate A.B. when she ordered the investigation on July 7, 2011. Additionally, the trial court found that A.B. was not cooperative when the Agency contacted him to investigate him as a placement option for Child shortly after Child's

birth. Considering these facts, an additional continuance so that the Agency could investigate A.B., who did not cooperate with the Agency in the first place, was unwarranted. Moreover, the trial court determined that A.B. testified at the July 14, 2011 hearing and provided information that the Agency would discover through any potential investigation. And Father has not articulated what additional information could have been introduced at the hearing had the Agency conducted the home investigation. Therefore, Father did not suffer any prejudice from the denial of the continuance.

**{¶54}** Thus, we conclude that the trial court did not abuse its discretion when it denied Father's motions for a continuance.

F.

**{¶55}** Father also argues that the trial court erred by failing to hold the Agency in contempt for disobeying the court's order that the Agency conduct a home investigation of A.B. as a potential placement option for Child. Although Father did not move to hold the Agency in contempt before the trial court, Father argues that the trial court should have sua sponte held the Agency in contempt.

**{¶56}** Because Father could have argued to the trial court that the Agency should be held in contempt, but he chose not to, we review his argument under a plain error standard. *See Rocky v. Rockey*, 4th Dist. No. 08CA4, 2008-Ohio-6525, ¶ 37, quoting *Sprouse v. Miller*, 4th Dist. No. 07CA32, 2008-Ohio-4284, ¶ 11 ("It is a cardinal rule of appellate procedure that 'an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected.'").

**{¶57}** We conclude that the trial court did not commit plain error by failing to hold the Agency in contempt.  As indicated above, the magistrate was not aware of the Agency's previous efforts to investigate A.B. as a placement option, and the trial court found that A.B. did not cooperate with the Agency when it contacted him shortly after Child's birth.  This implies that, had the magistrate been aware of these facts, she would not have issued the July 7, 2011 order to investigate A.B. in the first place.  Additionally, the trial court determined that the Agency used reasonable efforts to investigate A.B. (in addition to other members of Child's extended family).  Finally, the trial court determined that A.B. provided the information that the Agency would discover through any potential investigation when A.B. testified at the July 14, 2011 hearing.  Therefore, Father suffered no prejudice as a result of the Agency's failure to investigate A.B. as a placement prior to the hearing.  Consequently, the trial court's failure to find the Agency in contempt for not investigating A.B. as a placement option does not amount to plain error.

### G.

**{¶58}** For all the above reasons, we conclude Father's arguments regarding "issues" related to A.B. lack merit.  Consequently, we overrule Father's second assignment of error.

### IV.

**{¶59}** In his third assignment of error, Father contends that he suffered from ineffective assistance of counsel.

**{¶60}** "The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of

counsel." *In re A.C.H.*, 4th Dist. No. 11CA2, 2011-Ohio-5595, ¶ 50, citing *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), in turn citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998). "'Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.'" *Wingo* at 666, quoting *Heston* at 827.

**{¶61}** "To reverse a trial court's judgment based upon a claim of ineffective assistance, the [appellant] must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the [appellant] of a fair trial." *In re A.C.H.*, 2011-Ohio-5595, ¶ 51, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 108; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). "Failure to satisfy either prong is fatal as the [appellant's] burden requires proof of both elements." *State v. Hankison*, 4th Dist. No. 09CA3326, 2010-Ohio-4617, ¶ 104, quoting *State v. Hall*, 4th Dist. No. 07CA837, 2007-Ohio-6091, ¶ 11.

**{¶62}** In its September 15, 2011 Entry, the trial court stated, "[Father's trial counsel] did not raise the issue of [the Agency's] failure to take any action [regarding investigating A.B. as a placement option for Child] after the July 7, 2011 order or make any objections or request for continuance based on that issue." September 15, 2011 Entry at 2. At the July 14, 2011 hearing, Father's trial counsel sought a continuance so that A.B. could move for custody of Child. Father's trial counsel did not, however, raise

the issue of the Agency's investigation of A.B. as a placement option for Child. Consequently, Father argues that he suffered from ineffective assistance of counsel based on his trial counsel's failure to raise the investigation issue.

{¶63}  Even assuming trial counsel's failure to raise the investigation issue after the July 7, 2011 order constituted deficient performance, Father cannot demonstrate the prejudice necessary to prevail on an ineffective assistance of counsel claim.  As noted above, the magistrate was unaware of the Agency's previous attempt to investigate A.B. when she issued the July 7, 2011 order.  This indicates that the magistrate would not have ordered the investigation on July 7, 2011 had she been aware of the Agency's previous attempt to investigate A.B.  Moreover, the trial court determined that A.B. presented all relevant information through his testimony at the July 14, 2011 hearing. And finally, Father has not indicated what additional information the Agency could have obtained had it conducted a home investigation of A.B. prior to the July 14, 2011 hearing.  As a result, Father was not prejudiced by his trial counsel's failure to raise the investigation issue after July 7, 2011.  Consequently, Father's ineffective assistance claim must fail.

{¶64}  Accordingly, we overrule Father's third assignment of error.

V.

{¶65}  Having overruled all of Father's assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, J. and McFarland, J.: Concur in Judgment and Opinion.

For the Court

BY:_____
         Roger L. Kline, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**